180 N.J. Super. 100 (1981)
433 A.2d 829
NJM, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
NATIONWIDE FUND RAISERS, INC., A GEORGIA CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided April 15, 1981.
*101 Apruzzese & McDermott, P.C., for plaintiff (Louis D. Mattielli appearing).
Jardine, Morrice & Pagano for defendant (Joseph R. Pagano appearing).
YOUNG, J.S.C.
The constraining effect of World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), on the interpretation and application of New Jersey's "long-arm" rule, R. 4:1-1 et seq., is raised by defendant's motion challenging in personam jurisdiction. Defendant Nationwide Fund Raisers, Inc., a Georgia corporation (hereinafter Nationwide), is engaged in the business of selling food and related products to fund-raising organizations. Plaintiff NJM, Inc., a New Jersey corporation (hereinafter NJM), manufacturer of packaging and labeling machinery, sues to recover the balance allegedly due on an executed contract for the sale of a Thorobred Pacer, Model 203, labeling machine.
*102 In support of its motion to dismiss the Georgia corporation argues that, except for the transaction giving rise to the claim, it has had no contacts with this State. Nationwide advances several facts: First, that NJM solicited defendant's business in Chicago and later in Georgia. Counsel for NJM conceded this point at argument and also that the order was written in Illinois. Second, that this contract was performed by plaintiff in Lebanon, New Hampshire. Plaintiff's counsel acknowledged that the "bulk" of the manufacture took place in its New Hampshire plant because of a labor dispute at its Hoboken facility where only part of the machine was made. Third, Nationwide stresses that it has no assets or contacts in or with New Jersey, i.e., it has no agents, employees or registered agent here, does not maintain any bank accounts, rent office space or own equipment, inventory or property in this State. Lastly, Nationwide established that it does not solicit or sell in New Jersey, nor have any of its representatives entered this State to do business. Nationwide submits that it lacks the traditional "minimum contacts" to satisfy the decisional construction of the Due Process Clause of the Fourteenth Amendment.
In reply NJM argues that under the contractual terms endorsed by Nationwide, the contract was accepted in Hoboken, N.J., to which office Nationwide was required to forward the written agreement accompanied by part payment, specifications and samples. Additionally, because title passed from New Jersey after several telephone calls, NJM concludes that Nationwide should reasonably have expected to become subject to the in personam jurisdiction of the courts of this State.
New Jersey, by virtue of adopting the "long-arm" rule, R. 4:4-4, and judicial construction thereof, sanctions service of process upon nonresident defendants to the outer limits of the due process precepts of the Constitution. Kislak, Inc. v. Trumbull Shopping Park, 150 N.J. Super. 96, 98 (App.Div. 1977). The source of the oft-cited due process parameters is International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in which the Supreme Court wrote as follows:

*103 Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he has certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice". [326 U.S. at 316, 66 S.Ct. at 158].
In New Jersey, as indeed in most states, the in personam jurisdictional requirements have been applied liberally as courts have extended the reach of state long-arm statutes or rules of court. See Moon Carrier v. Reliance Ins. Co., 153 N.J. Super. 312 (Law Div. 1977). The liberal application is exemplified by reference to a recent opinion of the Appellate Division in which the court used the term "minimal contacts" instead of the term used by the Supreme Court of the United States and the Supreme Court of New Jersey, "minimum contacts." International Shoe, supra; Avdel Corp. v. Mecure, 58 N.J. 264 (1971). The paragraphs here quoted from Ketcham v. Charles R. Lister International, Inc., 167 N.J. Super. 5 (App.Div. 1979), represent the prevalent construction of our appellate courts:
In New Jersey we have adopted a judicial policy which permits service on nonresident defendants to the outer limits of due process requirements. See R. 4:4-4(c)(1); Avdel Corp. v. Mecure, 58 N.J. 264 (1971); Roland v. Modell's Shoppers World of Bergen County, 92 N.J. Super. 1 (App.Div. 1966). And as a consequence, jurisdiction has been exercised wherever possible with a liberal and indulgent view if the facts reasonably support the presence of the flexible concepts of "fair play and substantial justice."
........
The development of the law in this area reflects a broadening concept of the prerequisite of minimal contacts when dealing with the business activities of a foreign corporation in this state. As we observed in Amercoat Corp. v. Reagent Chem. & Research, Inc., 108 N.J. Super. 331 (App.Div. 1970), courts have found "sufficient contacts for personal jurisdiction where virtually any form of economic entry into the state was evident ... [S]olicitation [of business], in and of itself, may be sufficient `contact' to comport with the requirements of due process." 108 N.J. Super. at 340 [at 7, 9 brackets in original.]
That expression represents the state of the law when the Supreme Court decided World-Wide Volkswagen Corp. v. Woodson, supra, which was an appeal on certiorari from the Supreme Court of Oklahoma. Oklahoma, like New Jersey and many other states, had adopted an expansive view in finding minimum contacts on which to ground the exercise of in personam jurisdiction. *104 In World-Wide, Oklahoma courts exercised personal jurisdiction over four out-of-state corporations sued for damages arising from an automobile accident. Plaintiffs Harry and Kay Robinson, residents of New York, purchased an Audi automobile in Massena, New York, in 1976. A year later, while en route to Arizona, the Robinson vehicle was struck in the rear while passing through Oklahoma, causing serious injuries to Kay Robinson and their two children. The Robinsons filed a products liability suit in Oklahoma, naming the manufacturer, Audi NSU Auto Union Aktiengesellschaft (Audi); its importer, Volkswagen of America, Inc., (Volkswagen); its regional distributor, World-Wide Volkswagen Corporation (World-Wide), and the retail dealer, Seaway Volkswagen, Inc. (Seaway).
Only defendants World-Wide and Seaway entered special appearances to contest the exercise of in personam jurisdiction by the Oklahoma District Court for Creek County. The two defendants established that they had no contacts with Oklahoma apart from the fact that an Audi automobile previously sold in New York had been involved in an accident while travelling through Oklahoma. Seaway established that it sold automobiles only in New York; World-Wide presented evidence that it distributed cars, parts and accessories only in New York, New Jersey and Connecticut. The relationship of the two corporations with Audi and Volkswagen was contractual only. The District Court of Oklahoma rejected the arguments of defendants and sustained jurisdiction. The Supreme Court of Oklahoma on appeal denied the issuance of a writ of prohibition.
The Supreme Court of the United States, as a preface to the distinction which the court was to draw, quoted the rationale of the Supreme Court of Oklahoma, 444 U.S. at 290-291, 100 S.Ct. at 563-564, 62 L.Ed.2d at 497, a reading of which will suggest parallels to the published reports of the courts of New Jersey:
In the case before us, the product being sold and distributed by the petitioners is by its very design and purpose so mobile that petitioners can foresee its possible use in Oklahoma. This is especially true of the distributor, who has the exclusive right to distribute such automobile [sic] in New York, New Jersey and *105 Connecticut. The evidence presented below demonstrated that goods sold and distributed by the petitioners were used in the State of Oklahoma, and under the facts we believe it reasonable to infer, given the retail value of the automobile, that the petitioners derive substantial income from automobiles which from time to time are used in the State of Oklahoma. This being the case, we hold that under the facts presented, the trial court was justified in concluding that the petitioners derive substantial revenue from goods used or consumed in this State. [Quoting from 585 P.2d at 354.]
The Supreme Court rejected the rationale here noted, and concluded that as far as Oklahoma was concerned, the commercial transactions of the retail distributor and the retail dealer were "far too attenuated a contact to justify that State's exercise of in personam jurisdiction over them." 444 U.S. at 299, 100 S.Ct. at 568, 62 L.Ed.2d at 502. The court then reiterated its admonition in Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958), against the liberal propensity of state courts in finding "minimum contacts" to justify assertion of jurisdiction:
But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. [Citation omitted.] Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective states. [444 U.S. at 294, 100 S.Ct. at 565, 62 L.Ed.2d at 499.]
The Supreme Court focused upon one of the prime elements frequently invoked to vindicate jurisdiction, that of foreseeability. In rejecting the primacy of that element the court stated that "`foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." 444 U.S. at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500. The "critical" function which foreseeability serves in a due process analysis is "not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.
Lastly, the Supreme Court assayed the component of economic gain derived from the sale of products which are mobile and may be operated throughout the country, more particularly in *106 the State of Oklahoma. The court rejected the argument that such contact could support jurisdiction, noting that such contact is much too tenuous and collateral a relation to the forum, and not a "constitutionally cognizable contact." 444 U.S. at 299, 100 S.Ct. at 568, 62 L.Ed.2d at 502.
From a more positive approach, the Supreme Court declared that constitutionally cognizable contacts require purposeful activity by a defendant, which concept was amplified in the excerpt here quoted as the jurisdictional prerequisites were keyed to the Volkswagen case:
When a corporation "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, supra, [357 U.S.] at 253, 78 S.Ct. at 1240, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been a source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. [Citation omitted.] [444 U.S. at 297-298, 100 S.Ct. at 567, 62 L.Ed.2d at 501-502].
The court concluded that the delineated standard of minimum contacts had not been satisfied and ordered the decision of the Supreme Court of Oklahoma reversed.
The application of these recently promulgated due process standards to the case at bar cause certain components of the transaction to assume controlling significance. Nationwide, contesting jurisdiction, is a buyer who responded to the purposeful out-of-state solicitation efforts of NJM. Otherwise expressed, Nationwide did not purposefully enter New Jersey with the intent to solicit or to profit from that entry. On the contrary, as appraised from the pecuniary component, it is NJM which stands to profit from the transaction as a seller. See U-Anchor Advertising, Inc. v. Burt, 553 S.W.2d 760 (Tex.Sup.Ct. 1977).
*107 Moreover, the transaction giving rise to the claim was an "isolated occurrence" in that Nationwide had no other commercial transactions with New Jersey corporations. In essence, it comes as a "fortuitous circumstance" that Nationwide now finds itself in a New Jersey court for, as already noted, the Georgia corporation was solicited outside of this State and had its order written in Illinois. The transaction between the parties stands apart as an isolated agreement as distinguished from a series of agreements which would give rise to a continuing commercial relationship. See Southwest Offset, Inc. v. Hudco Publishing Co., Inc., 622 F.2d 149 (5 Cir.1980). Nationwide, by purchasing a machine from a manufacturer located in this State, cannot be said to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." See World-Wide, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501, citing Hanson v. Denckla, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.
The minimum contacts standard is not satisfied simply because some essential activity incident to the contract took place in New Jersey. Economic activity, so as to be constitutionally cognizable, must rise to a higher level. Neither foreseeability standing alone can provide a satisfaction of the minimum contacts, nor, according to the recent opinion of the Supreme Court, will "virtually any form of economic entry into the state...." Ketcham, 167 N.J. Super. at 9. The reasoning which undergirds these principles was graphically expressed by the Supreme Court in World-Wide:
If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there, see Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502, 507 (CA4, 1956); a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey, Reilly v. Phil Tolkan Pontiac, Inc., 372 F. Supp. 1205 (N.J. 1974); or a Florida soft drink concessionaire could be summoned to Alaska to account for injuries happening there, see Uppgren v. Executive Aviation Services, Inc., 304 F. Supp. 165, 170-171 (Minn. 1969). Every seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel. [444 U.S. at 296, 100 S.Ct. at 566, 62 L.Ed.2d at 500-501].
*108 In each of the cases cited by the Supreme Court a seller placed his goods into the stream of commerce for his own profit. When injury occurred in states with which the seller had no other contact than the mere happenstance use of his product, state courts were precluded from exercising in personam jurisdiction by findings of lack of minimum contacts. In the present case defendant is a purchaser of a product that was partially manufactured in New Jersey pursuant to a contract which had been both solicited and largely executed outside of this State. This court concludes that the minimum contacts necessary to support in personam jurisdiction are here not present.
The motion of defendant Nationwide for an order dismissing the complaint of plaintiff NJM for lack of in personam jurisdiction is granted.