755 A.2d 1204 (2000)
333 N.J. Super. 420
BAYWAY REFINING COMPANY and Tosco Corporation, Plaintiffs-Appellants,
v.
STATE UTILITIES, INC., Raymond M. Young and Lucy Young Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 2000.
Decided July 25, 2000.
*1206 Patrick M. Flynn and Thomas A. Muccifori, Haddonfield, argued the cause for appellants (Archer & Greiner attorneys, Mr. Flynn, on the brief).
Philip Elberg, Newark, argued the cause for respondents (Medvin & Elberg, attorneys, Mr. Elberg on the brief).
Before Judges BAIME, EICHEN and WECKER.
*1205 The opinion of the court was delivered by WECKER, J.A.D.
Plaintiffs, Bayway Refining Company and Tosco Corporation, appeal the dismissal of their complaint for lack of personal jurisdiction. The motion court found that *1207 defendants, State Utilities, Inc. and Raymond and Lucy Young, lacked the required minimum contacts with New Jersey to support jurisdiction. We agree and therefore affirm.

I.
Bayway Refining Company is a subsidiary of plaintiff Tosco Corporation, a corporation organized under the laws of Delaware and authorized to conduct business in New Jersey.[1] Plaintiff manufactures petroleum products such as heating oil, kerosene, diesel fuel and gasoline at its refinery in Linden, New Jersey. In 1993, plaintiff entered into a long-term lease and took over operation of Northville Industries Corporation's Long Island wholesale fuel terminals.
Defendant State Utilities ("State"), a corporation organized under the laws of New York, maintains its principal place of business in Lindenhurst, Suffolk County, New York. Defendant Raymond Young is State's principal. State provides home heating oil to homeowners in Suffolk and Nassau counties in Long Island. For many years before 1993, State purchased its fuel oil from Northville's wholesale terminals, one in Nassau County and one in Suffolk County. Between 80-90% of the fuel purchased by State in the two Long Island counties was refined in Linden and transported to Northville's (later Bayway's) terminals in Long Island.
The business relationship between plaintiffs and State began when Bayway took over operation of the Northville terminals. Just prior to taking over the Long Island terminals, Bayway sent letters to Northville's customers, including State, soliciting their continued business. The letter advised Northville's customers of Bayway's wholesale credit terms and noted that Bayway retained Northville's Long Island marketing staff, would be available to answer questions related to the transition. The letter also listed certain Bayway employees along with their Linden, New Jersey phone numbers as additional contacts.
Raymond Young responded to Bayway's solicitation by submitting a credit application on behalf of State to Bayway. The credit application was sent to Bayway's Linden address. According to the certification of Robert Young, State's president, all of State's dealings with Bayway were conducted through William D'Amico, a former Northville marketing representative who remained in that position as a Bayway employee in Long Island.
Robert Fraczkiewicz, Bayway's Wholesale Credit Manager in Linden, requested and obtained a personal guaranty along with a financial statement from defendants Raymond and Lucy Young. The guaranty was executed in New York and sent to New Jersey and included a provision for it to "be construed in accordance with the laws of the State of New York." The document included no forum selection clause.
Each year, Bayway's credit manager requested updated financial information from defendants, and their New York accountant forwarded the requested information to Bayway.
Raymond Young also signed a Terminal Access Agreement with Bayway in 1993. That agreement stated that any disagreements would be construed in accordance with New Jersey law. The Terminal Access Agreement also did not contain a forum selection clause.
For at least four years, between 1993 and 1997, State entered into term sales agreements (forward contracts) with plaintiff for the purchase of fuel oil. Those written agreements, signed by Raymond Young for State, provided for New York law to govern any disputes, and also provided for "the non-exclusive jurisdiction of the courts situated in New York." The credit applications, personal guaranties and term contracts were all drafted by Bayway. State purchased the oil either *1208 through forward contracts, which guaranteed the oil at a set price during the covered periods, or through "spot" contracts, which allowed for purchase within one or two days. State placed all of its orders with D'Amico through his Melville, New York office. After receiving State's order, D'Amico would call an internal hotline in New Jersey to process the order.
Bayway's invoices to State originated in Linden and displayed the Linden address. In the early years of their relationship, State mailed its payment checks to Bayway's bank, The Bank of New York. Later, State arranged for payments to be made by electronic funds transfer from its New York bank to Bayway's bank. During the relevant period, none of State's trucks left Long Island, and State had no customers in New Jersey. Young and his wife Lucy lived in Babylon, New York and also owned a home in Florida.
At some point, Bayway offered its customers, including State, a tour of its Linden refining facilities. At least one of the Youngs' two sons may have attended.[2] Bayway also claims that on one occasion it provided Giants football tickets to Raymond Young.
Bayway's complaint alleges that State failed to perform under contracts for the purchase of fuel oil at the rate of 2,000 barrels per month during a total of nine months, and that State owes Bayway $280,768 for breach of those contracts. State's answer asserts that it is not obligated under the alleged contracts because it never signed the contracts. State's motion to dismiss for lack of in personam jurisdiction was granted, and the motion judge explained his decision as follows:
[T]he depot or distribution center is located in New York, the defendants pick up their oil from that distribution center in New York, the sales contract is entered into in New York by sales personnel from the plaintiff with the defendant, the contracts for personal guarantees, et cetera, were entered into in New York and that the defendants' only contact with the State of New Jersey is that they purchased refined oil refined in the plaintiff's refinery, their credit reports were reviewed in New Jersey and approved and the payments are received in New Jersey by way of the banks with their electronic [transfer].
So, therefore, I do not find that there are ... minimum contacts within the State of New Jersey by the defendants to give this state jurisdiction.

II.
A New Jersey court may exercise in personam jurisdiction over a non-resident defendant "consistent with due process of law." R. 4:4-4(b)(1). New Jersey's long-arm jurisdiction extends to the "outermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207 (1971). As our Supreme Court recently reiterated:
[T]he test for "due process requires only that in order to subject a defendant to a judgment in personam, if he [or she] be not present within the territory of the forum, he [or she] have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
[Blakey v. Continental Airlines, Inc., 164 N.J. 38, 66, 751 A.2d 538 (2000)(quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940))).]
When a defendant has maintained continuous and systematic activities *1209 in the forum state, the defendant is subject to jurisdiction on any matter, irrespective of its relation to the state. See Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323, 558 A.2d 1252 (1989). Jurisdiction over that defendant is considered "general." Plaintiff does not contend that defendant maintains sufficient activity in New Jersey to subject it to general jurisdiction in this state. Thus the issue before us is whether plaintiff's cause of action against these defendants arises out of a sufficient relationship between defendants and the State of New Jersey to invoke this court's specific jurisdiction, which requires that defendants have certain "minimum contacts" with the state. Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. 106, 119, 649 A.2d 379 (1994)(citing Lebel, supra, 115 N.J. at 322, 558 A.2d 1252); see also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283, 1298 (1958). "In the context of specific jurisdiction, the minimum contacts inquiry must focus on `the relationship among the defendant, the forum, and the litigation.'" Lebel, 115 N.J. at 323, 558 A.2d 1252 (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683, 698 (1977)).
Due process is satisfied "so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel, 115 N.J. at 323, 558 A.2d 1252 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98, 100 S.Ct. 559, 567-68, 62 L.Ed.2d 490, 501-02 (1980)). In determining whether the defendant's contacts are purposeful, a court must examine the defendant's "conduct and connection" with the forum state and determine whether the defendant should "reasonably anticipate being haled into court [in the forum state]." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. "[T]he existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state." Waste Management, supra, 138 N.J. at 126, 649 A.2d 379. The minimum contacts of a defendant are evaluated on a case-by-case basis. Blakey, 164 N.J. at 66, 751 A.2d 538, citing Waste Management, 138 N.J. at 122, 649 A.2d 379.
Because "minimum contacts" requires that the contacts supporting jurisdiction result from the defendant's purposeful conduct and not the unilateral actions of the plaintiff, see World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. at 567-68, 62 L.Ed.2d at 501-02, New Jersey courts have found it significant to identify the initiator of the commercial contact. See Avdel, supra, 58 N.J. at 272-73, 277 A.2d 207; Elizabeth Iron Works v. Kevon Const. Corp., 155 N.J.Super. 175, 179, 382 A.2d 648 (App.Div.1976); Resin Research Labs., Inc. v. Gemini Roller Corp., 105 N.J.Super. 401, 404, 252 A.2d 415 (App. Div.1969).
As we have previously noted, "Although the controlling principles can be articulated with disarming ease, the difficulty is in their application to concrete disputes where the courts continue to struggle to define the contours of due process of law which will sustain the exercise of personal jurisdiction." Creative Business Decisions, Inc. v. Magnum Communications Ltd., Inc., 267 N.J.Super. 560, 567, 632 A.2d 298 (App.Div.1993); see also J.I. Kislak, Inc. v. Trumbull Shopping Park, Inc., 150 N.J.Super. 96, 98-99, 374 A.2d 1246 (App.Div.1977) ("[T]he unresolved question in each case is not the statement of the principles of law involved but rather the application of those principles to a particular fact complex.")

III.
The material facts relating to jurisdiction are not in dispute. State's contacts with New Jersey can be summarized as follows: State contracted to continue its purchase of fuel oil from the New York terminals after the New Jersey plaintiff took over operation of the terminals; State's initial credit application, solicited *1210 by Bayway, was forwarded to Bayway and reviewed by Bayway in New Jersey; Robert and Lucy Young executed a personal guaranty at Bayway's request and sent it to Bayway's New Jersey address; the fuel oil State purchased in New York was refined at Bayway's New Jersey facilities; payments for fuel oil purchased by State were either mailed to Bayway's bank or electronically transmitted into Bayway's bank account; Bayway once gave Raymond Young tickets to a New York Giants football game to be played in New Jersey; and one of the Youngs' sons may have attended a tugboat tour of plaintiff's New Jersey facilities.
We will address each of these contacts, no one of which alone is sufficient to warrant the exercise of jurisdiction. We begin with the contractual relationship between State and Bayway. Their commercial relationship was no more than a continuation of State's customer relationship with a New York seller, NIC. The contract in issue was solicited by Bayway's letter to State, as an NIC customer, in Long Island. It was Bayway, not State, that requested the credit application and the personal guarantee from the Youngs in order to establish State's credit. Thus State's initial contacts with Bayway's New Jersey office were prompted by Bayway's solicitation and not by State's purposeful foray into New Jersey. We recognize, of course, that obtaining credit approval apparently was in State's interest as well as Bayway's.
State's acceptance of Bayway's offer to establish a commercial relationship (including the issuance of credit) cannot alone confer jurisdiction. See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 152 (3d Cir.1995) (passive California buyer under contract with Pennsylvania seller is not subject to specific jurisdiction in Pennsylvania). If the law were otherwise, every commercial purchase would subject the buyer to jurisdiction in the home state of the seller on every dispute related to the transaction. While our courts have "push[ed] at the `outermost limit' of personal jurisdiction," Lebel, supra, 115 N.J. at 329, 558 A.2d 1252 (citation omitted), we have not eliminated all limits. The existence of a contractual relationship alone is not enough to sustain jurisdiction unless the foreign corporation entering into that relationship can reasonably have contemplated "significant activities or effects" in the forum state. Corporate Dev. Specialists, Inc. v. Warren-Teed Pharm., Inc., 102 N.J.Super. 143, 155, 245 A.2d 517 (App.Div.1968). While a contract "will not automatically establish sufficient minimum contacts with the forum state, it will be examined in the context of the overall business transactions related to and surrounding the [agreement] and the parties' relationship." Creative Business, 267 N.J.Super. at 570, 632 A.2d 298 (quoting In re Rehabilitation of Mutual Benefit Life Ins. Co., 258 N.J.Super. 356, 370, 609 A.2d 768 (App.Div.1992)).
The choice of law clauses incorporated into the personal guarantees (New York law) and the terminal access agreement (New Jersey law) hardly factor into our decision. Aside from these obviously different choices of law, the choice of law is not forum selection and does not establish jurisdiction. See, e.g., William Sternberg & Assoc., Inc. v. Litho Supply Inc., 219 N.J.Super. 201, 206, 530 A.2d 53 (Law Div.1987). Compare Hanson v. Denckla, 357 U.S. 235, 254, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958)(factors pointing to choice of law do not necessarily confer jurisdiction) with Burger King Corp. v. Rudzewicz, 471 U.S. 462, 481-82, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528, 547 (1985) ("choice-of-law provision [need not] be ignored in considering whether a defendant has `purposely invoked the benefits and protections of a State's laws for jurisdictional purposes.")
Nor does the fact that State mailed its payments for oil to Bayway's New Jersey office support the proposition that State availed itself of the "benefits" or "protections" of New Jersey law, or militate *1211 in favor of New Jersey's jurisdiction. See Lebel, supra, 115 N.J. at 325, 558 A.2d 1252. It is not uncommon for large corporations to have billing offices or banking relationships in a state other than the state where the corporation or its customer is located. Bayway could have required that payments be mailed or transferred to any number of locations. Jurisdiction premised only upon the presence of a billing office and a customer's adherence to requested mailings to that office in a particular state would be "random," "fortuitous," and "attenuated." See Burger King, 471 U.S. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542. Nor is a wire transfer of funds into a bank in the former state sufficient to confer jurisdiction. Dollar Savings Bank v. First Security Bank of Utah, N.A., 746 F.2d 208, 213 (3d Cir.1984). This is not a case where State sought to "tap an interstate market for its product," such that its mere use of the instrumentalities of commerce (that is, mail and bank transfers) could subject it to jurisdiction in New Jersey. See Lebel, 115 N.J. at 325, 558 A.2d 1252.
The fact that one of defendants' sons, an individual not alleged to have been involved in State's business at all, may have attended a tour of plaintiff's New Jersey facilities is too insignificant to confer jurisdiction over State. Bayway cites this "contact" as evidence that State knew that the oil it was purchasing was refined in New Jersey and that its purchases therefore had effects in New Jersey. State's knowledge of the source of the heating oil was never in question. Knowledge that some aspect of the production of goods to fulfill a contract occurs in a jurisdiction is not enough to establish the required "minimum contacts" with that jurisdiction. We can assume the oil was drilled in a different state (or country) and conveyed by a pipeline from the state or port of origin to New Jersey. Neither the facilities nor the labor employed in such states would support jurisdiction over a claim for payment if brought in the courts of those states.
Finally, the fact that Young once was given tickets to a New York Giants football game is too trivial to affect jurisdiction. Nor do the sum of these contacts constitute the kind of purposeful conduct or "intentional act[] of the defendant to avail itself of some benefit of [the] forum state" that would justify jurisdiction in New Jersey. See Waste Management, 138 N.J. at 126, 649 A.2d 379.
We recognize that the combined effect of several contacts with the state, no one of which is sufficient, might under some circumstances establish "minimum contacts." Not so here.
State's role in the transaction sued upon was no more than that of a passive buyer. State did nothing to avail itself of the benefits or protections of New Jersey law, nor did it have reason to contemplate that by continuing to purchase oil from the same New York terminals as it had in the past, it would be causing significant effects in New Jersey. Bayway's sale of home heating oil to State was a commercial transaction of a type that occurs perhaps hundreds of thousands of times every day. No special manufacturing was required; no special delivery was involved; no special financing terms existed; in short, State's purchases from Baywayboth those completed without dispute and those alleged to be in breachinvolved nothing more than an agreement to buy a specified quantity of a generic, mass-produced commodity for an agreed upon price at an agreed upon time. In each of the cases relied upon by plaintiffs to establish jurisdiction here, the foreign defendant had entered into a contract either for goods or services made to order by the New Jersey corporation, or for a joint enterprise that clearly contemplated ongoing activity in New Jersey.
In Creative Business, supra, the defendant, a Georgia corporation, and plaintiff, a New Jersey corporation, were both involved *1212 in the business of developing and providing credit management decision and control systems for banks, retailers and other credit institutions. 267 N.J.Super. at 564, 632 A.2d 298. The parties entered into a joint venture in which each company agreed to pay the other five percent of the total revenue generated as a result of customer referrals; they also entered into a "longstanding" marketing joint venture. Id. at 564-65, 632 A.2d 298. When the relationship broke down and the New Jersey corporation sued the Georgia corporation here in New Jersey, we reversed a dismissal for lack of jurisdiction based upon
[t]he simple and overriding fact ... that defendant reached out beyond Georgia and negotiated with a New Jersey corporation to pool resources in order to obtain the manifold benefits derived from affiliation with a venture which was national in scope. The parties entered into a carefully structured long term relationship that envisioned continuing and wide-reaching contacts. In light of defendant's ties to the New Jersey corporation, the nature and quality of its connection to this State and its courts cannot fairly be characterized as "random," "fortuitous," or "attenuated."
[Id. at 571, 632 A.2d 298 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480, 105 S.Ct. 2174, 2186, 85 L.Ed.2d 528, 545-46 (1985)).]
State's undertaking to continue purchasing home-heating oil from two of the New York terminals it had used for years does not amount to purposely availing itself of New Jersey resources any more than did its prior purchases from the New York terminal operator.
In Resin Research Labs., Inc. v. Gemini Roller Corp., 105 N.J.Super. 401, 252 A.2d 415 (App.Div.1969), the New York defendant, a manufacturer of rollers for the printing trades, contacted Resin Research, a New Jersey corporation, to procure a formula for a vinyl resin to use in its rollers. Resin undertook to prepare the vinyl resin for Gemini, and after Gemini refused to pay the balance on the contract, Resin sued. Id. at 404, 252 A.2d 415. The trial court dismissed the complaint, reasoning that Gemini's office and factory were in New York, that Gemini owned no real property in New Jersey and that the only evidence of Gemini's contact with New Jersey was solely related to the transaction at issue. Id. We reversed because "Gemini contacted Resin in New Jersey and Resin's work was done here, where it was reasonable to expect it would be done." Id. Because "substantial performance" of the contract was contemplated in New Jersey, the place of contract was irrelevant.
Two critical facts distinguish Resin Research. First, the out-of-state corporation made a specific foray into New Jersey, soliciting the New Jersey firm to produce the desired product. Second, the product Gemini sought was not a standard, off-the-rack product; it was to be specially designed and manufactured to order by the New Jersey company.
Plaintiffs' reliance on Avdel Corporation v. Mecure, 58 N.J. 264, 277 A.2d 207 (1971), is similarly misplaced. In that case, Mecure, a New York corporation, contacted Avdel, a New Jersey corporation, in order to procure specially designed rivets for use in Mecure's construction of lockers. Mecure also specifically requested that representatives from Avdel in New Jersey come to New York to demonstrate their rivets, and Mecure traveled to Avdel's Teterboro plant to return some of the unused rivets. In finding jurisdiction, our Supreme Court noted that the New York defendant ordered the rivets in New Jersey knowing that the order would have significant effects in New Jersey, defendant traveled to New Jersey to discuss the contract, and defendant traveled to New Jersey again to return unused material. In sum, the Court found "substantial business effects" in New Jersey, combined with defendant's "numerous contacts in relation *1213 to the contract." Id. at 272-73, 277 A.2d 207.
Similarly, in Elizabeth Iron Works v. Kevon Const. Corp., 155 N.J.Super. 175, 382 A.2d 648 (App.Div.1976), aff'd o.b., 75 N.J. 332, 382 A.2d 636 (1978), it was the out-of-state defendant who initiated contact with the New Jersey plaintiff for the purpose of specially manufacturing goods. We found jurisdiction largely on that basis. Id. at 179-80, 382 A.2d 648.
By contrast, the Law Division in NJM, Inc. v. Nationwide Fund Raisers, Inc., 180 N.J.Super. 100, 433 A.2d 829 (Law Div. 1981), dismissed plaintiff's complaint based upon a lack of the required minimum contacts. In that case, the defendant, a Georgia corporation, was solicited to purchase a labeling machine by the plaintiff, a New Jersey corporation. The order for the machine was written in Illinois, and the bulk of the manufacture of the machine was done in New Hampshire. Additionally, the contract was accepted in Hoboken, and the payments were also forwarded there. The motion court rejected New Jersey's jurisdiction, finding that the minimum contacts were not established. The court found it significant that the defendant had merely "responded to the purposeful out-of-state solicitation efforts of [plaintiff]." Id. at 106, 433 A.2d 829. See also Vetrotex Certainteed, 75 F.3d at 152; J.I. Kislak, 150 N.J.Super. at 101-02, 374 A.2d 1246.
Here the evidence reveals no intent on State's part to do business in New Jersey, nor to benefit from its laws, nor to affect persons or events in New Jersey. The contract required no special undertaking by a New Jersey business. While plaintiff did refine the oil at its Linden plant, it did not refine the oil according to any specific requirements imposed by State. Defendant's contacts with the New Jersey corporation took place almost exclusively through plaintiff's marketing and sales representative based in New York. Defendant's conduct here was not an "intentional act calculated to create an actionable event" in New Jersey. See Waste Management, supra, 138 N.J. at 126, 649 A.2d 379 (citing Calder v. Jones, 465 U.S. 783, 791, 104 S.Ct. 1482, 1488, 79 L.Ed.2d 804, 813 (1984) (publication of a libelous article which the writer and editor knew would cause the greatest harm in California gave California jurisdiction)). Nor is there any suggestion that the volume of defendant's purchases constituted a significant portion of Bayway's refining operation.
While State's alleged breach of the oral contract caused an effect in New Jersey in the sense that a New Jersey company lost the revenue the sale would have generated, that is not an effect that supports specific jurisdiction. Were it otherwise, there would be jurisdiction as a matter of law in every collection case. The question then remains whether the nature of the transaction sued upon is such that the defendant "should have been aware of the possibility of litigation arising in [the forum state]". Lebel, supra, 115 N.J. at 328, 558 A.2d 1252. To uphold plaintiff's expansive view of long-arm jurisdiction would subject every out-of-state buyer of a generic commodity produced in New Jersey to the jurisdiction of New Jersey courts to enforce every sale, a result which surely would discourage potential buyers from placing orders with New Jersey firms.
We hold that purchasing a mass-produced commodity from a New Jersey producer (at least where the quantity purchased does not constitute a significant portion of the seller's production), accompanied by mailing or transferring credit documents and payments at the seller's request to New Jersey, does not rise to the level of "minimum contacts" required to satisfy due process and therefore does not subject the buyer to New Jersey jurisdiction over the seller's breach of contract claim. Despite the broad sweep of New Jersey's long-arm jurisdiction, the instruction of the Supreme Court in Hanson v. Denckla cannot be ignored:

*1214 [I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456, 1459. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him.

[357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296].
Defendants' minimal contacts with New Jersey do not rise to the level of the constitutionally mandated "minimum contacts."
Plaintiff also argues that it would not be inconvenient for defendant to litigate this matter in New Jersey, and that defendant's objection to litigating in Camden County raises a venue and not a jurisdictional issue. Because we find the required minimum contacts to be lacking, we need not address whether the exercise of jurisdiction would nevertheless "offend `traditional notions of fair play and substantial justice.'" Lebel, supra, 115 N.J. at 328, 558 A.2d 1252. See also Burger King, 471 U.S. at 476-77, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. Although the proximity of the New Jersey forum to defendants' New York location would affect the fairness of New Jersey's exercise of jurisdiction based on minimum contacts, see J.W. Sparks & Co. v. Gallos, 47 N.J. 295, 303, 220 A.2d 673 (1966), we reiterate that "convenience is not the equivalent of jurisdiction, and ... no matter how convenient, there can be no jurisdiction without the essential minimum contacts." Roland v. Modell's Shoppers World of Bergen County, 92 N.J.Super. 1, 7, 222 A.2d 110 (App. Div.1966). Moreover, the "convenience" factor negates any contention that New Jersey has an interest in providing a forum for a plaintiff, such as Bayway, which is certainly able to bring suit against defendant in New York.
We affirm the judgment of the Law Division dismissing plaintiff's complaint for lack of jurisdiction.
NOTES
[1] We shall refer to plaintiff Bayway in the singular throughout this opinion.
[2] The record is unclear concerning whether Raymond Young himself attended the tour. Although we read any disputed facts in a light most favorable to the plaintiff as the non-moving party, plaintiff does not allege defendant's presence on the tour as a fact, only a possibility.