# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3636-21

JOHN DOE 1,

     Plaintiff-Appellant,

v.

ARCHDIOCESE OF
PHILADELPHIA,

     Defendant-Respondent.

_____

Argued November 13, 2023 – Decided December 27, 2023

Before Judges Gilson, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0108-20.

Ruxandra Maniu Laidacker argued the cause for appellant (Kline & Specter, PC, attorneys; Charles L. Becker, David Kehm Inscho, Ruxandra Maniu Laidacker, and Phillip Michael Pasquarello, on the briefs).

Nicholas M. Centrella argued the cause for respondent (Clark Hill PLC, attorneys; Nicholas M. Centrella, on the brief).

PER CURIAM

Plaintiff alleges that he was sexually abused in the late 1970s and early 1980s by Father John Mulholland, a Catholic priest.[1]  At the time of the alleged abuse, Mulholland was serving as a priest in the Archdiocese of Philadelphia (the Archdiocese).  Plaintiff appeals from an order granting the Archdiocese's motion to dismiss for lack of personal jurisdiction.  We affirm because jurisdictional discovery established that the Archdiocese did not purposefully avail itself of any benefits in New Jersey related to Mulholland's alleged abuse of plaintiff.  Therefore, New Jersey does not have personal jurisdiction over the Archdiocese related to this lawsuit.

I.

We discern the facts from the record developed during jurisdictional discovery.  The Archdiocese is an unincorporated, religious, non-profit association that operates in Pennsylvania.  Its principal place of administration is in Philadelphia, and it oversees Catholic parishes in five Pennsylvania counties.  The Archdiocese does not oversee or operate any churches, parishes,

---

[1]  Plaintiff identifies himself as "John Doe 1" in his complaint.  We refer to him as plaintiff to protect privacy interests concerning allegations of child sexual abuse.  See R. 1:38-3(c)(9); see also N.J.S.A. 2A:61B-1(f).

A-3636-21

or religious facilities in New Jersey. It also does not assign priests to any parishes in New Jersey.

The Archdiocese does not currently own any real property in New Jersey. In the past, the Archdiocese did own several properties in New Jersey that were given to it, but those properties were sold before 2013. The Archdiocese also owned and operated two properties in Ventnor, New Jersey, which it used as vacation homes for priests. The Ventnor properties were acquired in 1963 and sold in 2012 and 2013.

Mulholland was ordained as a Catholic priest in the Archdiocese in 1965. Thereafter, he served as a priest in the Archdiocese at various parishes and facilities, all located in Pennsylvania. In 2008, the Pope "laicized" Mulholland, which meant that he was dismissed from the clerical state. See Glossary of Terms, The Diocese of Springfield, Mass., https://diospringfield.org/osevaglossaryofterms/ (last visited Dec. 19, 2023) (defining "laicization").

Plaintiff is a resident of Pennsylvania. During his childhood, he attended and served as an altar boy at Blessed Virgin Mary Church (Blessed Mary) in Darby, Pennsylvania. While attending Blessed Mary, plaintiff met Mulholland, who served as a priest at Blessed Mary from 1973 to 1977. Plaintiff asserts that

Mulholland used his position as a priest to groom plaintiff and develop a relationship of trust with plaintiff and his family. Plaintiff further asserts that Mulholland then used that position of trust to gain permission from plaintiff's parents to take plaintiff on trips, including overnight trips to a home Mulholland owned in Mystic Island, New Jersey.

Plaintiff alleges that beginning in 1976, Mulholland engaged in various "games" and behaviors with plaintiff that involved bondage and activities that sexually aroused Mulholland. From approximately 1977 to 1980, when plaintiff was a teenager, Mulholland brought plaintiff to his home in Mystic Island about ten to twelve times. He alleges that each time, Mulholland had plaintiff engage in "master-servant" "games" involving sexual torture.

In January 2020, plaintiff sued the Archdiocese in New Jersey. Plaintiff contends that the Archdiocese is responsible for Mulholland's sexual abuse of him, and he asserted causes of actions for vicarious liability, negligence, negligent supervision, and negligent hiring and retention. Plaintiff also contends that the Archdiocese had known of Mulholland's "proclivities" since 1968 but did not restrict his activities with children. Instead, according to plaintiff, the Archdiocese had moved Mulholland to other parishes in Pennsylvania, including Blessed Mary.

A-3636-21

The Archdiocese moved to dismiss plaintiff's complaint for lack of personal jurisdiction. The trial court initially denied that motion and directed the parties to engage in jurisdictional discovery. Following the completion of that discovery, the Archdiocese again moved to dismiss the complaint.

On June 28, 2022, after hearing arguments from counsel, the trial court issued an order granting the motion and dismissing plaintiff's claims against the Archdiocese for lack of personal jurisdiction. Plaintiff now appeals.

II.

On appeal, plaintiff makes two arguments. He contends that the Archdiocese is subject to specific jurisdiction in New Jersey because Mulholland was an agent of the Archdiocese. He also argues that the trial court erred by focusing narrowly on Mulholland's abusive actions in New Jersey, rather than considering all of Mulholland's actions and how the Archdiocese facilitated those actions.

Personal jurisdiction is a "'mixed question of law and fact' that must be resolved at the outset, 'before the matter may proceed.'" Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017) (quoting Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)). We review a trial court's findings of fact with respect to jurisdiction "to determine if those findings are

supported by substantial, credible evidence in the record," but conclusions of law are reviewed de novo. Id. at 358. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Having considered plaintiff's arguments in light of the record and governing law, we reject them. The facts disclosed during jurisdictional discovery established that the Archdiocese is not subject to jurisdiction in New Jersey because it did not purposefully avail itself of activities in New Jersey sufficient to satisfy the "minimum contacts" required for personal jurisdiction. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945).

We have recently published two opinions that set forth the law on when a non-resident diocese is subject to personal jurisdiction in New Jersey for the alleged past sexual abuse of a minor by a priest. See D.T. v. Archdiocese of Phila., ___ N.J. Super. ___ (App. Div. 2023); JA/GG Doe 70 v. Diocese of Metuchen, ___ N.J. Super. ___ (App. Div. 2023). Like the plaintiffs in those cases, plaintiff here concedes that he must show specific personal jurisdiction over the Archdiocese.

To determine whether a non-resident defendant may be subject to specific personal jurisdiction, courts examine the "relationship among the defendant, the forum, and the litigation." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). "In order for a state court to exercise [specific] jurisdiction over a non[-]resident defendant, the lawsuit 'must aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Jardim v. Overley, 461 N.J. Super. 367, 376 (App. Div. 2019) (third and fourth alterations in original) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)); accord Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994), cert. denied, 513 U.S. 1183 (1995); see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. ___, 141 S. Ct. 1017, 1025 (2021).

"The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel, 115 N.J. at 323 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)); see also Waste Mgmt., 138 N.J. at 126 (explaining that "the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state"). The contacts "must be the defendant's own choice and not

'random, isolated, or fortuitous.'" Ford, 141 S. Ct. at 1025 (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984)).

Moreover, courts determine, based on the defendant's "'conduct and connection' with the forum state . . . whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. 420, 429 (App. Div. 2000) (alteration in original) (quoting World-Wide Volkswagen, 444 U.S. at 297). In making that determination, a court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 113 (1987). So, a court weighs "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." Ibid. (quoting World-Wide Volkswagen, 444 U.S. at 292).

Neither the Archdiocese's former ownership of properties in New Jersey nor its supervision over Mulholland as one of its priests establishes specific jurisdiction over the Archdiocese in New Jersey related to Mulholland's alleged sexual abuse of plaintiff in New Jersey. There is no evidence that the Archdiocese's former ownership of real properties in New Jersey had any

8

relation to plaintiff's allegations of abuse by Mulholland. Plaintiff testified that he was abused by Mulholland in the late 1970s and early 1980s at a private home Mulholland owned in Mystic Island, New Jersey. The Archdiocese's former ownership of other properties in New Jersey was not related to Mulholland's use of the home in Mystic Island. Specific jurisdiction requires "a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255, 265 (2017).

Moreover, there is no evidence that the Archdiocese knew of, approved, or sanctioned Mulholland taking plaintiff to a private home in Mystic Island. Accordingly, there is no evidence demonstrating that the Archdiocese purposefully availed itself of any benefit or activity in New Jersey in connection with plaintiff's allegations of abuse by Mulholland.

For the reasons we detailed in D.T., we reject plaintiff's argument that Mulholland was acting as an agent of the Archdiocese when Mulholland sexually abused plaintiff. ___ N.J. Super. at ___ (slip op. at 14-19). In short, there is no evidence that Mulholland was acting within the scope of his responsibilities as a priest when he sexually assaulted plaintiff. See Bristol-Myers Squibb Co., 582 U.S. at 265; Shaffer, 433 U.S. at 204; Lebel, 115 N.J. at 323.

We also reject plaintiff's argument that the Archdiocese's failure to restrict Mulholland's activities confers personal jurisdiction over the Archdiocese in New Jersey. For purposes of determining personal jurisdiction, which in this matter was raised on a motion to dismiss, we accept plaintiff's allegation that the Archdiocese knew of Mulholland's deviant sexual behaviors with children beginning in 1968. We also accept plaintiff's contention that the Archdiocese transferred Mulholland to other parishes in the Archdiocese to avoid a public scandal. While that conduct, if proven, would be inappropriate and highly irresponsible, it does not establish specific personal jurisdiction over the Archdiocese in New Jersey. All the alleged conduct regarding transferring Mulholland from one parish to another took place in Pennsylvania. Therefore, that conduct does not constitute intentional acts of the Archdiocese to avail itself of some benefit in or from New Jersey. See Ford, 141 S. Ct. at 1025; Waste Mgmt., 138 N.J. at 126.

Finally, we also reject plaintiff's argument that because the Archdiocese knew that many of its priests were sexually abusing children, the Archdiocese's failure to restrict Mulholland's activities conferred personal jurisdiction in New Jersey. All the priests in the Archdiocese served in Pennsylvania, and the Archdiocese oversaw the activities of those priests in Pennsylvania from its

10

administrative headquarters in Philadelphia. While it was foreseeable that priests would travel outside of Pennsylvania, there is no evidence that Mulholland took plaintiff to New Jersey on trips sanctioned or sponsored by the Archdiocese. More importantly, there is no evidence that the Archdiocese had intentionally availed itself of any benefit in or from New Jersey in connection with Mulholland taking plaintiff to his private home in New Jersey. In short, even if plaintiff proved all his allegations against the Archdiocese, those proofs would not establish personal jurisdiction over the Archdiocese in New Jersey in connection with plaintiff's lawsuit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3636-21