# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2962-22

JANE DOE,

     Plaintiff-Appellant,

v.

ARCHDIOCESE OF
PHILADELPHIA,

     Defendant-Respondent,

and

THE BROTHERS OF THE
CHRISTIAN SCHOOLS, INC.,

     Defendant.

_____

Argued December 18, 2023 – Decided January 24, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0470-19.

M. Stewart Ryan argued the cause for appellant (Laffey Bucci & Kent, LLP, attorneys; M. Stewart Ryan and Brian Dooley Kent, on the briefs.)

Nicholas M. Centrella argued the cause for respondent (Clark Hill, PLC, attorneys; Nicholas M. Centrella, on the brief).

PER CURIAM

In 2019, plaintiff sued the Archdiocese of Philadelphia (the Archdiocese) in New Jersey.[1] She alleged that in the early 1980s, when she was approximately fifteen years old, Father John Paul (John Paul), a priest of the Archdiocese, sexually abused her. Further, she alleged some of the abuse occurred in Wildwood Crest and Ocean City, New Jersey.

Plaintiff appeals from an order dismissing her complaint against the Archdiocese for lack of personal jurisdiction. We affirm because jurisdictional discovery failed to establish the Archdiocese purposefully availed itself of benefits in New Jersey with respect to John Paul's alleged abuse of plaintiff.

---

[1] Plaintiff identifies herself as "Jane Doe" in her complaint. We use initials or fictitious names to protect privacy interests concerning allegations of child sexual abuse. See R. 1:38-3(c)(9) and (12) (referring to Criminal and Municipal Court proceedings); R. 1:38-3(d)(12) (referring to Family Part proceedings).

Thus, New Jersey does not have personal jurisdiction over the Archdiocese related to this lawsuit.

I.

We discern the facts from the record developed during jurisdictional discovery. The Archdiocese is an unincorporated, religious, non-profit association that operates in Pennsylvania. Its principal place of administration is in Philadelphia, and it oversees Catholic parishes in five Pennsylvania counties. The Archdiocese does not oversee or operate any churches, parishes, or religious facilities in New Jersey. It also does not assign priests to any parishes in New Jersey.

The Archdiocese does not currently own any real property in New Jersey. In the past, the Archdiocese did own several properties in New Jersey that were given to it, but those properties were sold before 2013. The Archdiocese also owned and operated two properties in Ventnor, New Jersey, which it used as vacation homes for priests. The Ventnor properties were acquired in 1963 and sold in 2012 and 2013.

John Paul was ordained as a Catholic priest in the Archdiocese of Philadelphia in 1972. Thereafter, he served as a religion teacher until 2015, when he voluntarily laicized, which meant that he agreed to be dismissed from

3

the clerical state.  See Glossary of Terms, The Diocese of Springfield, Mass., https://diospringfield.org/osevaglossaryofterms/ (last visited Dec. 19, 2023) (defining "laicization").

Plaintiff is currently a resident of Maryland but resided in Pennsylvania when the alleged abuse occurred.  She testified she attended Bishop McDevitt High School in Wyncote, Pennsylvania from 1981 to 1985.  Plaintiff first met John Paul during her freshman year of high school, while he was serving as a religion teacher and occasionally a school minister.  Plaintiff alleges John Paul sexually abused her for years after she turned fifteen years old.

Plaintiff testified most of the abuse by John Paul occurred in Pennsylvania, at residences in Pennsylvania owned by various religious orders, at the high school, in John Paul's car, and in plaintiff's driveway.  During the summer breaks before junior and senior year of high school, she alleged the sexual abuse occurred in the ocean in Wildwood Crest, near her family's vacation home, the Amber Lantern Inn in Ocean City, and a residence owned by co-defendant the Christian Brothers order in Ocean City.

John Paul testified he attended annual training sessions, retreats, and synods in New Jersey with other school employees, at the behest of the Archdiocese.  It is undisputed none of the sexual abuse is alleged to have taken

4

place during any of these training sessions, retreats, synods, or any event organized by the Archdiocese.

In December 2019, plaintiff sued the Archdiocese in the Law Division in Cape May County. Plaintiff asserted the Archdiocese was responsible for John Paul's sexual abuse of her based on theories of vicarious liability, negligence, negligent supervision, and negligent hiring and retention.

The Archdiocese moved to dismiss plaintiff's complaint for lack of personal jurisdiction. Initially, the trial court denied that motion and directed the parties to engage in jurisdictional discovery. Following the completion of that discovery, the Archdiocese again moved to dismiss the complaint.

After hearing argument, on April 25, 2023, the trial court issued a written opinion and order granting defendant's motion and dismissing plaintiff's complaint for lack of personal jurisdiction over the Archdiocese. Plaintiff now appeals.

II.

On appeal, plaintiff makes two arguments. She contends the Archdiocese is subject to specific jurisdiction in New Jersey because John Paul was an agent of the Archdiocese. She also argues the Archdiocese had sufficient minimum

contacts with New Jersey at the time the alleged sexual abuse occurred and, therefore, New Jersey can exercise jurisdiction consistent with due process.

Personal jurisdiction is a "'mixed question of law and fact' that must be resolved at the outset, 'before the matter may proceed.'" Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017) (quoting Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)). We review a trial court's findings of fact with respect to jurisdiction "to determine if those findings are supported by substantial, credible evidence in the record," but conclusions of law are reviewed de novo. Id. at 358. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Having considered plaintiff's arguments in light of the record and governing law, we reject them. The facts disclosed during jurisdictional discovery established the Archdiocese is not subject to jurisdiction in New Jersey because it did not purposefully avail itself of activities in New Jersey sufficient to satisfy the "minimum contacts" required for personal jurisdiction. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945).

6

We have recently published two opinions that set forth the law on when a non-resident diocese is subject to personal jurisdiction in New Jersey for the alleged past sexual abuse of a minor by a priest.  See D.T. v. Archdiocese of Phila., ___ N.J. Super. ___ (App. Div. 2023); JA/GG Doe 70 v. Diocese of Metuchen, ___ N.J. Super. ___ (App. Div. 2023).  As in those cases, plaintiff concedes she must demonstrate New Jersey has specific personal jurisdiction over the Archdiocese.

To determine whether a non-resident defendant may be subject to specific personal jurisdiction, courts examine the "relationship among the defendant, the forum, and the litigation."  Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  "In order for a state court to exercise [specific] jurisdiction over a non[-]resident defendant, the lawsuit 'must aris[e] out of or relat[e] to the defendant's contacts with the forum.'"  Jardim v. Overley, 461 N.J. Super. 367, 376 (App. Div. 2019) (third and fourth alterations in original) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)); accord Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994), cert. denied, 513 U.S. 1183 (1995); see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. ___, 141 S. Ct. 1017, 1025 (2021).

A-2962-22

"The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel, 115 N.J. at 323 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)); see also Waste Mgmt., 138 N.J. at 126 (explaining that "the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state"). The contacts "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" Ford, 141 S. Ct. at 1025 (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984)). Moreover, courts determine, based on the defendant's "'conduct and connection' with the forum state . . . whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. 420, 429 (App. Div. 2000) (alteration in original) (quoting World-Wide Volkswagen, 444 U.S. at 297).

"A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Asahi Metal Indus. Co. v. Superior Ct. of Cal., 480 U.S. 102, 113 (1987). So, a court weighs "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering

A-2962-22

fundamental substantive social policies." Ibid. (quoting World-Wide Volkswagen, 444 U.S. at 292).

Neither the Archdiocese's former ownership of properties in New Jersey nor its supervision over John Paul as one of its teachers establishes specific jurisdiction over the Archdiocese in New Jersey related to John Paul's alleged sexual abuse of plaintiff in New Jersey.

There is no evidence that the Archdiocese's former ownership of real properties in New Jersey had any relation to plaintiff's allegations of abuse by John Paul. To the contrary, plaintiff has testified the abuse that occurred in New Jersey took place during summer breaks from school, and at commercial properties, public properties, or properties owned by specific religious orders. Plaintiff was vacationing with her family in New Jersey when John Paul spent time with her. Similarly, because no abuse is alleged to have occurred during, or connected with, the retreats, educational sessions, or synods John Paul attended at the behest of the Archdiocese, those events cannot establish the requisite minimum contacts. Specific jurisdiction requires "a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255, 265 (2017).

A-2962-22

Moreover, there is no evidence the Archdiocese knew of, approved, or sanctioned John Paul meeting plaintiff in Ocean City or Wildwood. Accordingly, there is no evidence demonstrating the Archdiocese purposefully availed itself of any benefit or activity in New Jersey in connection with plaintiff's allegations of abuse by John Paul.

For the reasons we detailed in D.T., we reject plaintiff's argument that John Paul was acting as an agent of the Archdiocese when he sexually abused plaintiff. ___ N.J. Super. at ___ (slip op. at 14-19). In short, there is no evidence John Paul acted within the scope of his responsibilities as a priest when he sexually assaulted plaintiff. See Daimler v. Bauman, 571 U.S. at 135; see also Bristol-Myers Squibb Co., 582 U.S. at 265; Shaffer, 433 U.S. at 204; Lebel, 115 N.J. at 323. As we stated in D.T., the agency argument addresses liability and is not relevant to an analysis of the minimum contacts required to establish personal jurisdiction.

Having addressed the discrete jurisdictional issue before us, we are mindful our Legislature purposely adopted laws to allow child victims of sexual abuse to seek redress for abuse suffered years ago. See the Child Victims Act (CV Act), L. 2019, c. 120. Enacted in 2019, the CV Act provided a two-year revival window for victims to file otherwise time-barred claims for sexual

abuses committed against them while minors. N.J.S.A. 2A:14-2b(a). Although we acknowledge the trauma suffered by these child victims, the federal Constitution still mandates that New Jersey have specific personal jurisdiction over the Archdiocese. Because that personal jurisdiction does not exist in this case, we are compelled to affirm the dismissal of the claims against the Archdiocese.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2962-22