267 N.J. Super. 560 (1993)
632 A.2d 298
CREATIVE BUSINESS DECISIONS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
MAGNUM COMMUNICATIONS LIMITED, INC., A GEORGIA CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1993.
Decided October 26, 1993.
*563 Before Judges PETRELLA, BAIME and CONLEY.
Edward M. Bernstein argued the cause for appellant (Bernstein & Shafer, attorneys; Mr. Bernstein, of counsel and on the brief).
*564 William Fox argued the cause for respondent (Cullen and Dykman, attorneys; Peter G. Sheridan, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Plaintiff Creative Business Decisions, Inc. appeals from the Law Division's order, dismissing its complaint against defendant Magnum Communications, Ltd. The Law Division found that defendant's contacts with New Jersey were insufficient to confer jurisdiction. Alternatively, the court dismissed the suit on the basis of forum non conveniens. We reverse.

I.
At the outset, we note that the Law Division decided the jurisdictional issues presented on sketchy documentary submissions without the benefit of discovery or further development of the evidence. Our understanding of the facts is thus gleaned from the paltry and incomplete record submitted to us.
Plaintiff is a New Jersey corporation with its principal place of business in Princeton. It is in the business of developing and providing credit management decision and control systems for banks, retailers and other credit institutions. Defendant is a Georgia corporation and is engaged in the same type of business.
In its complaint, plaintiff sought damages from defendant for breach of contract and negligence. Two separate causes of action were alleged. The first pertained to commissions defendant allegedly owed plaintiff for customer referrals. Specifically, plaintiff contended that the parties had entered a joint venture in which the recipient company agreed to pay five percent of the total revenue generated as a result of customer referrals and that defendant had breached that agreement. Plaintiff asserted that defendant had failed to pay monies due on referral accounts including, but not limited to, Lomas Bank and Marshall Fields.
*565 The second cause of action related to a longstanding marketing venture between the parties. Plaintiff claimed that, as an outgrowth of this venture, defendant agreed to organize and conduct a conference in Lake Lanier, Georgia. Plaintiff charged that defendant failed to properly coordinate the conference, resulting in excessive costs and loss of business.
We digress to observe that the second cause of action was inartfully drafted in the complaint. Although plaintiff sought damages based upon defendant's "negligence," the gist of the claim pertained to an alleged breach of contract resulting in consequential damages. Defendant's counterclaim supports our interpretation of plaintiff's cause of action. Referring to the same transaction, defendant asserted that plaintiff breached its agreement by failing to share in the funding of the conference.
In its answer and subsequent motion to dismiss the complaint, defendant asserted that New Jersey lacked jurisdiction. Specifically, defendant argued that its business operations had no nexus to New Jersey and that maintenance of plaintiff's suit in this State offended traditional notions of fair play and substantial justice. Plaintiff's president, Pat Nanda, filed a certification in opposition to defendant's motion. According to Nanda, beginning in 1986, the parties entered into a series of overlapping joint ventures respecting customer referrals and marketing. The customer referral agreement was memorialized in a written contract signed by the presidents of both companies on June 6, 1986. The contract, entitled "FINDER'S FEE AND REVENUE SHARING AGREEMENT," provided commissions for customer referrals and stated that the companies would "equally share all future revenues generated by the development" of specified computer software.
In addition, the parties entered into an extensive marketing agreement commencing in April 1987 and continuing through September 1990. In furtherance of this agreement, the parties jointly hired Michael Lambert and Gregory Keyes to market and sell their products. Lambert was based in Georgia and was responsible for staffing and administration. Keyes operated as an *566 account executive from his base in plaintiff's Princeton office. Although a confirmation letter from defendant provided that the salaries of all personnel were to be jointly funded, plaintiff claimed that defendant paid the entire amount of Keyes' salary. Nanda further alleged that, as part of their joint marketing arrangement, the parties prepared a referral list, dividing responsibilities for customer solicitation. So too, sales territories were divided and salespersons were assigned. The agreement defined applicable commission structures, travel expenses and procedures for referrals.
In his certification, Nanda claimed that he was in frequent contact with defendant's president, Carl Eikhoff, vice-president, John Carr, and other Magnum employees. He also asserted that, in addition to telephone contacts, he met with Eikhoff and Carr in New Jersey. He further noted that Magnum had deposited monies in plaintiff's New Jersey bank account. Although the facts are sketchy, evidence was also presented indicating that Keyes was the originator of the Lomas Bank account. Keyes apparently resigned from his position in December 1987 and, although a resident of New Jersey during his employment term, was not asked to submit an affidavit or certification relating to his activities with reference to the joint venture.
In support of its claim of jurisdiction, plaintiff pointed to other contacts defendant had with New Jersey which did not specifically relate to the causes of action alleged in the complaint. Specifically, plaintiff asserted that defendant had many large corporate clients in New Jersey which it identified. Plaintiff sought to characterize these contacts as "continuous and systematic."
Defendant countered that it had no contacts with New Jersey regarding the referral commissions and conference disputes. Defendant conceded that Keyes had originated the Lomas Bank account. Defendant also claimed that the Knight Group, a Florida based marketing organization, serviced the Marshall Fields account. Without elaborating further on the point, defendant contended that commissions had already been paid on the Marshall *567 Fields account and that some of the monies had been disbursed to Peter Profit, one of plaintiff's employees. Defendant asserted that it had little or no contact with New Jersey after Keyes' departure in 1987.
As we noted earlier, the Law Division concluded that defendant was not subject to suit in New Jersey because the causes of action alleged in plaintiff's complaint had no connection with this State. In reaching this conclusion, the court emphasized that defendant owned no tangible property in New Jersey and, thus, a judgment entered against it would be worthless. The court also concluded that even if New Jersey had jurisdiction, it would be improper to exercise its power to adjudicate the dispute because most of the key witnesses resided elsewhere.

II.
We first consider the question of whether New Jersey has personal jurisdiction over the defendant. Although the controlling principles can be articulated with disarming ease, the difficulty is in their application to concrete disputes where the courts continue to struggle to define the contours of due process of law which will sustain the exercise of personal jurisdiction.
Our long-arm rule permits service on nonresident defendants subject only to "due process of law." R. 4:4-4(e). We allow out-of-state service to the outermost limits permitted by the United States Constitution. Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207 (1971). In defining those limits, we look first to the decisions of the United States Supreme Court. Despite twists and turns along the way, the basic policy remains that which was originally pronounced by the Court some 48 years ago in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Specifically, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" *568 Id., at 316, 66 S.Ct. at 158, 98 L.Ed. at 102 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)).
Our Supreme Court has said that the purpose of this test "is to insure the fairness and reasonableness of requiring a nonresident to defend a lawsuit in the forum state," and, given that focus, "the jurisdictional test is not to be applied mechanically." Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 470, 508 A.2d 1127 (1986). Instead, "`the quality and nature of the (defendant's) activity in relation to the fair and orderly administration of the laws' must be examined on a case-by-case basis to determine if the minimum-contacts standard is satisfied." Ibid. (quoting International Shoe Co. v. Washington, 326 U.S. at 319, 66 S.Ct. at 159-60, 90 L.Ed. at 103-04).
The weight of the contacts that will sustain jurisdiction depends upon whether or not the subject of litigation arises out of defendant's contacts with the forum state. See Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322-23, 558 A.2d 1252 (1989); Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. at 471-72, 508 A.2d 1127. "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising `general jurisdiction'...." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404, 411 n. 9 (1984). General jurisdiction "subjects the defendant to suit on virtually any claim, even if unrelated to the defendant's contacts with the forum, but is unavailable unless the defendant's activities in the forum state can be characterized as `continuous and systematic' contacts." Lebel v. Everglades Marina, Inc., 115 N.J. at 323, 558 A.2d 1252 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. at 416, 104 S.Ct. at 1873, 80 L.Ed.2d at 412). "The greater measure of the contacts for general jurisdiction is deemed relevant because of the limited interest of the forum state in entertaining the coincidental litigation." Ibid.; see, e.g., Perkins v. Benguet Consol. *569 Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir.1987).
Where a suit arises out of or is related to the nonresident's contacts with the forum, jurisdiction is said to be "specific." Lebel v. Everglades Marina, Inc., 115 N.J. at 322, 558 A.2d 1252. In the context of specific jurisdiction, "the relationship among the [non-resident], the forum, and the litigation" must be carefully analyzed. Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683, 698 (1977). Minimum contacts exist if they resulted from the non-resident's purposeful conduct and not the unilateral activities of the plaintiff. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98, 100 S.Ct. 559, 567-68, 62 L.Ed.2d 490, 501-02 (1980). Stated somewhat differently, it is essential that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). "This `purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of `random,' `fortuitous,' or `attenuated' contacts...." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 797 (1984); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 299, 100 S.Ct. at 568, 62 L.Ed.2d at 502). It also insures that "a state's grasp does not exceed its jurisdictional reach." Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. at 470, 508 A.2d 1127.
Within this analytical framework, we conclude that the causes of action alleged in plaintiff's complaint "arise out of or [are] related" to defendant's contacts with New Jersey and that specific jurisdiction exists. As we noted earlier, we read plaintiff's complaint as alleging that defendant breached the customer referral and marketing agreements. Plaintiff's allegations relating to monies due as commissions are perfectly plain on this point. It is *570 conceded that plaintiff did not appreciate the necessity of alleging a contractual relationship respecting defendant's alleged failure to conduct the marketing conference in an appropriate manner. However, it is not in the spirit of present-day adjective or substantive law to withhold jurisdiction because of misconceptions in pleading theory. Instead, we look to the hard core of the pertinent fact situation alleged in the complaint. However phrased, the gist of plaintiff's complaint is that defendant breached its agreement to pay commissions and to properly conduct marketing conferences as required by contract.
We emphasize this point because, "[i]n determining whether a non-resident has `purposely created contacts' with a state, courts have considered as a factor the entry by [the defendant] into a contract ... in the forum state." In re Rehabilitation of Mutual Benefit Life Ins. Co., 258 N.J. Super. 356, 370, 609 A.2d 768 (App.Div. 1992). "While such a contract will not automatically establish sufficient minimum contacts with the forum state, it will be examined in the context of the overall business transactions related to and surrounding the [agreement] and the parties' relationship." Ibid.
Against this backdrop, we are persuaded that the Law Division viewed too narrowly the transactions between the parties and their relationship with New Jersey. It will be recalled that the Law Division heavily relied upon the fact that the wrongful conduct alleged in the complaint occurred in states other than New Jersey. The alleged breach of the commissions agreement concerned out-of-state customers and the botched marketing conference was conducted in Georgia. Unlike the Law Division, we do not view these facts as dispositive of the jurisdictional question. The United States Supreme Court long ago rejected the notion that personal jurisdiction might turn on "conceptualistic... theories of the place of contracting or of performance." Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 63 S.Ct. 602, 605, 87 L.Ed. 777, 782 (1943). Instead, the Court has emphasized the need for a "highly realistic" approach that recognizes that a *571 "contract[]" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the ... transaction." Id., at 316-17, 63 S.Ct. at 605, 87 L.Ed. at 782. "It is these factors  prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing  that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Burger King Corp. v. Rudzewicz, 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545.
We thus eschew an approach which would dissect the transaction and business relationship between the parties into discrete, episodic fragments. Instead, we find that the disputes between the parties grew directly out of longstanding business ventures which had a substantial connection with New Jersey. The simple and overriding fact is that defendant reached out beyond Georgia and negotiated with a New Jersey corporation to pool resources in order to obtain the manifold benefits derived from affiliation with a venture which was national in scope. The parties entered into a carefully structured long term relationship that envisioned continuing and wide-reaching contacts. In light of defendant's ties to the New Jersey corporation, the nature and quality of its connection to this State and its courts cannot fairly be characterized as "random," "fortuitous," or "attenuated." Id., at 480, 105 S.Ct. at 2186, 88 L.Ed.2d at 545-46. We, therefore, hold that defendant's contacts with New Jersey were sufficient to subject it to suit in this State.
We also conclude that assertion of jurisdiction over defendant would not offend traditional notions of fair play and substantial justice. In that respect, we observe the well settled principle that a non-resident whose activities establish minimum contacts must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id., at 477, 105 S.Ct. at 2184-85, 85 L.Ed.2d at 544. We find no sound basis to deny jurisdiction here. In reaching this conclusion, we *572 have considered "the burden on the non-resident, the forum state's interest in adjudicating the dispute, the resident's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." In re Rehabilitation of Mutual Benefit Life Ins. Co., 258 N.J. Super. at 371, 609 A.2d 768 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498); see also Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92, 105 (1987). We perceive no factor or combination of factors precluding New Jersey's exercise of jurisdiction in this case.

III.
We next turn to the second basis for the Law Division's dismissal of plaintiff's complaint, forum non conveniens. This point does not require extended discussion. We perceive no sound basis for application of the doctrine here.
Although phrased in a variety of ways, "the essence of the doctrine is that a court may decline jurisdiction whenever the ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate." D'Agostino v. Johnson & Johnson, Inc., 225 N.J. Super. 250, 259, 542 A.2d 44 (App.Div. 1988), aff'd, 115 N.J. 491, 559 A.2d 420 (1989). The necessary predicate to application of the doctrine is the existence of another forum where trial will best serve the convenience of the parties and the ends of justice. Civic S. Factors Corp. v. Bonat, 65 N.J. 329, 333, 322 A.2d 436 (1974); Wangler v. Harvey, 41 N.J. 277, 286, 196 A.2d 513 (1963); Gore v. United States Steel Corp., 15 N.J. 301, 311, 104 A.2d 670 cert. denied, 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954). More than a mere weighing of conveniences is required, because if the rule were otherwise, "motions to dismiss would become the usual thing ..., thus diverting the energies of counsel and the courts to quarrels over venue considerations." Starr v. *573 Berry, 25 N.J. 573, 587, 138 A.2d 44 (1958). While the present tendency is to avoid a rigid formula and to weigh sundry public and private factors, D'Agostino v. Johnson & Johnson, Inc., 225 N.J. Super. at 262, 542 A.2d 44, the principal focus is on the "element of harassment and vexation." Starr v. Berry, 25 N.J. at 584, 138 A.2d 44. "[A] plaintiff's choice of forum ordinarily will not be disturbed except upon a clear showing of real hardship or for some other compelling reason." Civic S. Factors Corp. v. Bonat, 65 N.J. at 333, 322 A.2d 436. Dismissal of a complaint is unwarranted unless the plaintiff's choice is shown to be "demonstrably inappropriate." Ibid.
No such showing was made in this case. In its documentary submissions, plaintiff identified numerous key witnesses who resided in New Jersey. Moreover, as we pointed out earlier, there is a "significant relationship between the issues in [this] case and the jurisdiction whose court was designated as the place for trial." D'Agostino v. Johnson & Johnson, Inc., 115 N.J. at 495, 559 A.2d 420.
We are thus convinced that plaintiff's choice of forum was not shown to be "demonstrably inappropriate." Civic S. Factors Corp. v. Bonat, 65 N.J. at 333, 322 A.2d 436. Nor did defendant satisfy its burden of establishing that plaintiff's choice was designed to subject it to "harassment and vexation." Starr v. Berry, 25 N.J. at 584, 138 A.2d 44.
Accordingly, the order of the Law Division dismissing plaintiff's complaint is reversed and the matter is remanded for trial.